# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30488

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2015

Lyle W. Cayce
Clerk

MICHAEL ALEXANDER,

Plaintiff - Appellant

v.

EXPRESS ENERGY SERVICES OPERATING, L.P.,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, JONES, and CLEMENT, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff-Appellant Michael Alexander appeals from the district court's order granting Defendant-Appellee Express Energy Services Operating, L.P.'s ("Express") motion for summary judgment on seaman status, concluding that Alexander is not a seaman and dismissing Alexander's claims against Express with prejudice. We affirm.

## I.

We begin with the controlling law. We review the district court's summary judgment ruling de novo, applying the same Fed. R. Civ. P. 56

standards as the district court.[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "The court is to consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."[3]

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[4]

"Summary judgment is appropriate if the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case," and we may affirm "on any ground supported by the record, even if it is different from that relied on by the district court."[5]

"To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. Land-based workers are not seamen."[6] To qualify as a seaman, a plaintiff must prove that he meets both prongs of the test set out by the

---

[1] *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 275 (5th Cir. 2014).

[2] Fed. R. Civ. P. 56(a).

[3] *Bluebonnet*, 754 F.3d at 276 (citation omitted).

[4] Fed. R. Civ. P. 56(c)(1).

[5] *Bluebonnet*, 754 F.3d at 276 (citations and internal quotation marks omitted).

[6] *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999) (citing *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548 (1997)).

No. 14-30488

Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995). First, he must prove that his duties "contribut[e] to the function of the vessel or to the accomplishment of its mission," which does not necessarily require that the plaintiff "aid in navigation or contribute to the transportation of the vessel," but does require that he "be doing the ship's work."[7]

> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. *See* 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2–10.1 to 2–11 (7th ed. 1994) ("If it can be shown that the employee performed a significant part of his work **on board the vessel** on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)). This requirement therefore determines which maritime employees in *Wilander*'s broad category of persons eligible for seaman status because they are "doing the ship's work," [*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)], are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.[8]

The Court emphasized that "[a] maritime worker who spends only a small fraction of his working time **on board a vessel** is fundamentally land

---

[7] 515 U.S. at 357 (citations and internal quotation marks removed).

[8] *Id.* at 368-69 (emphasis added).

3

based and therefore not a member of the vessel's crew, regardless of what his duties are."[9] The Court adopted the Fifth Circuit's rule of thumb for ordinary cases that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act," though courts may vary the rule depending on the facts of a particular case.[10] The Court explained that although the inquiry is fact-specific, "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict."[11]

Even before *Chandris* was decided, the Fifth Circuit focused on the amount of the work the plaintiff actually performed *on a vessel,*[12] and following *Chandris'*s adoption of that rule, we must continue to apply it. We have referred to "the Supreme Court's teaching in *Chandris* that a seaman's connection with a vessel includes a temporal requirement, i.e. **that the worker spend a substantial part of his work time aboard the vessel**."[13]

Our pre-*Chandris* en banc decision in *Barrett* provides a useful example of how we have applied this rule. There, a worker who was a member of a contract maintenance crew working on production platforms in the Gulf of Mexico was injured. Because many of the platforms were too small to accommodate the maintenance crew and their equipment, a jack-up barge was positioned alongside the small platforms to provide additional work space and

---

[9] *Id.* at 371 (emphasis added).

[10] *Id.*

[11] *Id.* (citations omitted).

[12] *See Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1073-74 (5th Cir. 1986) (en banc) (noting that a plaintiff may be a seaman if he was either permanently assigned to a vessel or "performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity" (discussing *Barrios v. Engine & Gas Compressor Servs., Inc.*, 669 F.2d 350, 353 (5th Cir. 1982); *Holland v. Allied Structural Steel Co.*, 539 F.2d 476, 484 (5th Cir. 1976))).

[13] *Nunez v. B&B Dredging, Inc.*, 288 F.3d 271, 276 (5th Cir. 2002) (emphasis added).

No. 14-30488

hold some of the equipment. The plaintiff, Barrett, performed the vast majority of his work on the platform and only did incidental work on the adjacent vessel. Relying on the seminal *Robison* case, we held:

> *Robison* requires evidence that the worker was "assigned permanently to . . . *or* performed a substantial portion of his work on the vessel." This test is, of course, disjunctive, and permits a worker to be a crew member if he does substantial work on the vessel even though his assignment to it is not "permanent."[14]

We made it clear that Barrett's work time on the vessel was inadequate to meet the seaman test: "Because he did not perform a substantial portion of his work aboard a vessel or fleet of vessels, he failed to establish that he was a member of the crew of a vessel."[15]

In short, to prove that he is a seaman, Alexander must prove both that (1) he contributed to the function of a vessel or to the accomplishment of its mission, and (2) he was assigned permanently to the vessel or spent a substantial part of his total work time—30% —aboard the vessel or an identifiable fleet of vessels. If he has failed to demonstrate at least a genuine dispute as to a material fact with respect to either prong, Express is entitled to summary judgment. With these standards in mind, we turn to the facts of the case.

## II.

Alexander was employed as a lead hand/operator in Express's plug and abandonment ("P&A") department, which specializes in plugging decommissioned oil wells on various platforms off the coast of Louisiana for Express's customers. At his deposition, he described his duties as ensuring that

---

[14] 781 F.2d at 1073 (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959); and *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 326 (5th Cir. 1977)).

[15] *Id.* at 1076.

everything was set up and running properly on the deck of the platform and ensuring that the plugging operation was successful. He testified that the plugging operation essentially required the P&A team to check the pressure of the well with various gauges and valves to make sure it was ready to be killed. After that, the team would remove the bridge plug from the well, place a nipple in the well, and pump fluids down the well to kill it. Once the well was under control, the team would clean it and pump cement into it, then cut and remove the pipe.

On August 11, 2011, Alexander was injured while working on a P&A project on a platform owned by Apache Corporation which had four wells on it. At the time of the accident, a liftboat owned by Aries Marine Corporation ("Aries"), the L/B RAM X ("RAM X"), was positioned next to the Apache platform, with a catwalk connecting the vessel to the platform. The record shows that the permanent crane, which was operated by an Aries employee for the benefit of the P&A crew, was located on the liftboat, while other equipment, including wireline equipment, was located on the platform. Alexander testified that he and the P&A crew had set up the equipment on the platform before work began, and he was working on the platform. Alexander was injured when a wireline from the crane snapped, dropping a bridge plug/tool combination which had been suspended a foot above the deck, which then rolled onto his foot.

Alexander filed this action under the Jones Act, 46 U.S.C. § 30104 *et seq.*, against Express and other defendants. Express filed a motion for summary judgment on seaman status, arguing that Alexander was a platform-based worker who failed to satisfy either prong of the *Chandris* seaman status test. With respect to the first prong, Express argued that Alexander did not contribute to the function of a vessel or the accomplishment of its mission because he worked on the wells on non-vessel fixed platforms. With respect to

the second prong, Express argued that even though Alexander had shown that approximately 35% of his P&A *jobs* involved the use of an adjacent liftboat, he had failed to demonstrate that he spent at least 30% of his total work time on the adjacent liftboat.

In response, Alexander argued as to the first prong that he did in fact contribute to the function of the Aries liftboat. As to the second prong, Alexander erroneously stated that Express conceded that he spent 35% of his total job on Aries liftboats; Express only stated that 35% of his jobs involved an adjacent liftboat. Alexander then argued that, under *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368 (5th Cir. 2001), and *Johnson v. TETRA Applied Technologies, L.L.C.*, No. CIV.A. 11-1992, 2012 WL 3253184 (E.D. La. Aug. 7, 2012), which applied *Roberts*, he was allowed to count toward the *Chandris* temporal requirement *all* of his time on jobs that used an adjacent vessel (here, at least 35%), without regard to how much time he himself spent on the vessel. Significantly, Alexander never offered any evidence that he spent 30% or more of his work time on a vessel; rather, his argument on this prong depends entirely on his interpretation of *Roberts*.

The district court granted Express's motion for summary judgment on the first prong, concluding that Alexander's duties in this case were similar to those of the plaintiff in *Hufnagel*, which this court held did not contribute to the function of a vessel because those duties related to the fixed platform, not the vessel.[16] In a footnote at the end of the opinion, the district court opined that Alexander had also failed to meet the second prong.

As noted above, we may affirm the district court "on any ground supported by the record, even if it is different from that relied on by the district

---

[16] *See Hufnagel*, 182 F.3d at 347.

court."[17] Pretermitting whether Alexander's duties contributed to the function of a vessel or the accomplishment of its mission, we conclude that Alexander has failed to demonstrate that he is a seaman under *Chandris*'s temporal connection prong. *Chandris* makes it clear that a seaman must spend a substantial amount of time, ordinarily 30%, actually working *on a vessel*. Alexander argues that *Roberts* means a plaintiff may count the amount of time he spent working on a platform toward that requirement if a vessel was merely adjacent to the platform and assisting with the platform work.[18] We cannot accept Alexander's argument because we are bound to follow clear and controlling Supreme Court precedent.

The undisputed summary judgment evidence shows that approximately 65% of Alexander's jobs involved a fixed platform only, without the help of an adjacent vessel. Even on the other jobs involving a vessel adjacent to the platform, his work occurred mostly on the platform. It is not sufficient under *Chandris* (or indeed under *Barrett*) that Alexander was merely *near* a vessel on more than 30% of his jobs or that he performed some incidental work on a vessel on those jobs; to be a seaman, he must show that he actually *worked on a vessel* at least 30% of the time. Alexander has failed to produce sufficient evidence to prove that point, which is an essential element of seaman status.

We conclude that Alexander has failed to carry his burden of showing that he is a seaman. We therefore affirm the district court's order granting

---

[17] *Bluebonnet*, 754 F.3d at 276 (citations and internal quotation marks omitted).

[18] The district court in *Johnson* also interpreted *Roberts* that way. *See* 2012 WL 3253184, at *4 ("However, the court counted the time plaintiff spent working alongside the employer's lift boats, which amounted to 24.88% of his time, separately from the time plaintiff spent working alongside lift boats owned by third parties, which amounted to 13.54%. Because plaintiff could not show that at least 30% of his time was spent in the service of a vessel or an identifiable fleet of vessels under common ownership or control, the court found that he could not prove seaman's status." (citations omitted)).

No. 14-30488

Express's motion for summary judgment and dismissing Alexander's claims against Express with prejudice.

AFFIRMED.