# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30650
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2016

Lyle W. Cayce
Clerk

RICHARD SKINNER,

   Plaintiff - Appellant

v.

SCHLUMBERGER TECHNOLOGY CORPORATION; HERCULES
LIFTBOAT COMPANY, L.L.C.; E P L OIL ; GAS, INCORPORATED;
GREENE'S ENERGY GROUP, L.L.C.; PAUL GUEHO,

   Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:13-CV-3146

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

In this maritime personal injury case, Plaintiff–Appellant Richard Skinner appeals the district court's denial of his motion to remand and the district court's grants of summary judgment. Because we find no error, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30650

I.

Richard Skinner was hired by Coil Tubing Services ("CTS"), a subsidiary of Schlumberger Technology Corporation ("Schlumberger"),[1] as a Field Specialist Trainee. In this role, Skinner performed coiled tubing work for a number of Schlumberger's clients. Skinner worked onshore at Schlumberger's district office in Maurice, Louisiana, on inland waters, and offshore on platforms and vessels. He worked on a variety of assignments, such as numerous coiled tubing jobs and a few pumping jobs, but maintained the same essential duties, focusing on coiled tubing work, throughout his employment.

EPL Oil & Gas, Inc. ("EPL"), an exploration and production company, hired Schlumberger to remove a tool stuck in EPL's well located in the West Delta 29 Block of the Gulf of Mexico, off the coast of Louisiana. EPL also hired Hercules Liftboat Company, LLC ("Hercules") pursuant to a time charter agreement to provide the lift boat, L/B BULL SHARK. The L/B BULL SHARK transported Schlumberger's employees and equipment to the well site and assisted Schlumberger's operation with its on-board crane. The L/B BULL SHARK jacked-up next to the platform, and a gangway plank provided access between the lift boat and the platform. Skinner claims that during the derigging operation (*i.e.*, after the main operation was completed and when the crew was moving equipment back to the L/B BULL SHARK from the platform), he noticed that a hydraulic hose, which was being lifted by the lift boat's crane, became entangled on the gangway. Rather than use his radio to contact the crane operator, Skinner alleges that he attempted to untangle the hose by pushing it off the gangway. In the process, he claims to have hurt his neck.

Skinner sued Schlumberger, EPL, and Hercules in Louisiana state court, alleging general maritime negligence and violations of the Jones Act.

[1] For simplicity, this opinion refers to CTS as Schlumberger.

2

No. 15-30650

Schlumberger removed the case to federal court based on diversity jurisdiction, the Outer Continental Shelf Lands Act ("OCSLA"), and federal question jurisdiction. It argued that Skinner fraudulently pleaded that he was a Jones Act seaman, thus removal was appropriate. Skinner filed a motion to remand, which the district court denied. Skinner later amended his complaint and added Greene's Energy Group, LLC ("Greene's Energy"), Christopher Guidroz, and Paul Gueho as additional defendants. Greene's Energy was hired by EPL to provide a "company man" at the platform. Greene's Energy in turn contracted with Christopher Guidroz to provide those services. Paul Gueho, an employee of Hercules, was allegedly operating the lift boat's crane when Skinner was injured.

Schlumberger then moved for summary judgment, which the district court granted. EPL, Hercules, Paul Gueho, and Greene's Energy also moved for, and were granted, summary judgment.[2] Skinner appealed, challenging the district court's order denying his motion to remand and the district court's grants of summary judgment.

II.

"The denial of a motion to remand an action removed from state to federal court is a question of federal subject-matter jurisdiction and statutory construction subject to *de novo* review." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F. 3d 362, 365 (5th Cir. 1995).

We also review a grant of summary judgment *de novo. Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Summary judgment is proper if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] Chris Guidroz was separately dismissed from the lawsuit on an unopposed motion.

No. 15-30650

### III.

Skinner presents ten different issues on appeal. All of these issues boil down to two essential questions: 1) Did the district court err when it denied Skinner's motion to remand? 2) Did the district court err when it granted summary judgment in favor of all the defendants? We address these questions in turn.

### A. Motion to Remand

Skinner argues that the district court's decision to deny his motion to remand was error. Skinner maintains that he was a seaman entitled to damages under the Jones Act. He argues that the removal petition contained insufficient averments to raise a fraudulent seaman status; that his unsworn declaration should have been accepted as true, thereby requiring remand; that the district court applied an improper standard; that more favorable Louisiana law should have allowed remand; that Skinner's time spent onshore preparing for jobs should qualify as time spent as a seaman; that Skinner's work on a certain vessel qualified as a new assignment; and that the district court improperly calculated the amount of time that he spent in service of vessels by using days as opposed to hours. None of Skinner's arguments have merit. The only argument deserving any discussion is Skinner's contention that he was a seaman.

The Supreme Court has established a two-prong test to determine if an individual worker is a seaman, and therefore entitled to the protections of the Jones Act. *See Chandris, Inc. v. Latsis,* 515 U.S. 347, 368 (1995). "First, . . . an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission." *Id.* (internal quotation marks omitted). "Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* The district court found that Skinner did not meet

the second prong of the test (*i.e.*, he did not have a substantial connection to a vessel or group of vessels). We agree.

In determining a worker's substantial connection to a vessel in navigation, the Supreme Court has stated that an appropriate rule of thumb for the ordinary case is that "a worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371. Skinner's numerous arguments that he satisfies this prong fail. Skinner maintained the same job and essential duties during his employment with Schlumberger, therefore none of his work assignments qualify as a new assignment under *Chandris*. His work on land at Schlumberger's district office was not in service of a vessel or fleet of vessels. *See Alexander v. Express Energy Servs. Operating, LP*, 784 F.3d 1032, 1037 (5th Cir. 2015) (finding that plaintiff's work on platforms, even when vessels were near the platforms, did not qualify under *Chandris*'s temporal connection prong as actually working on a vessel). And whether Skinner's time working aboard vessels is viewed by hours worked or days worked, he did not spend 30% of his time in service of a single vessel or fleet of vessels. *See* Overall Work Summary, ROA.247-51, and Hourly Work Summary, ROA.1225-29. Accordingly, Skinner was a not a seaman, and the district court did not err in denying his motion to remand.

**B. Summary Judgment**

As noted above, the district court found that Skinner failed to prove that he was entitled to seaman status under the Jones Act. Thus, it granted Schlumberger's motion for summary judgment. Because we agree with the district court's analysis that Skinner has not met *Chandris*'s second prong, he has not established seaman status. Thus, he cannot maintain a cause of action under the Jones Act. *See Alexander* 784 F.3d at 1033 ("To maintain a cause of

action under the Jones Act, the plaintiff must be a seaman. Land-based workers are not seamen.").

Skinner next argues that the district court erred by granting summary judgment in favor of EPL and Greene's Energy. He claims that EPL and Greene's Energy were negligent because they knew that Schlumberger would work its employees excessive hours, and it was this unsafe work condition that led to his injury. We find Skinner's argument unpersuasive.

"To establish maritime negligence, a plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (alternation in original) (internal quotation marks omitted). Skinner's claim fails because he does not show that EPL and Greene's Energy owed him a duty and that they breached that duty. "This Court has consistently held that a principal who hires independent contractors over which he exercises no operational control has no duty to discover and remedy hazards created by its independent contractors." *Wilkins v. P.M.B. Sys. Eng'g, Inc.*, 741 F.2d 795, 800 (5th Cir. 1984). An exception to this general rule occurs "where the principal [], despite the independent contractor arrangement, actually retained some degree of control over the manner or methods by which the contractor [] does his work." *Id.*

EPL hired Schlumberger as an independent contractor to perform the tool fishing operation. Their master service contract specified that: "[Schlumberger] shall perform its obligations for [EPL] as an independent contractor. [EPL] shall have no direction or control of the Work to be performed by [Schlumberger] or its employees, . . . ." EPL hired Greene's Energy to provide a company man for the project. Greene's Energy in turn contracted

with Guidroz to perform the work. Guidroz testified that he left the direction of the coiled tubing job up to Schlumberger's and Hercules's supervisors.

Skinner has failed to create a genuine dispute of material fact that the exception to the general rule applies here (*i.e.*, that EPL or Greene's Energy had operational control over Schlumberger's acts). Skinner has provided no evidence that EPL or Greene's Energy gave specific directives to Schlumberger as to how long their employees should work or how to perform any part of their jobs. And the presence of a company man alone is insufficient to put the principal in operational control. *See Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003). Thus, Skinner has failed to show that EPL or Greene's Energy owed him a duty.

Even if Skinner could show that EPL and Greene's Energy owed him a duty, he has failed to create a genuine dispute of material fact that EPL or Greene's Energy breached that duty when Skinner unilaterally decided to move the entangled hose without calling for an all-stop on the radio. Accordingly, summary judgment in favor of EPL and Greene's Energy was appropriate.

The district court also found that Skinner's negligence claims against Hercules and Gueho failed to establish a breach of duty, thus it granted summary judgment in Hercules's and Gueho's favor. We agree that any duty Hercules and Gueho may have owed to Skinner did not encompass the risk that Skinner would injure himself by performing an admittedly unsafe action that he voluntarily undertook without any direction to do so from Hercules or Gueho. Thus, summary judgment was appropriate.

## IV.

For the foregoing reasons, we AFFIRM the decision of the district court.