# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20506
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 11, 2020

Lyle W. Cayce
Clerk

GILBERT SANCHEZ,

> Plaintiff - Appellant

v.

SMART FABRICATORS OF TEXAS, L.L.C.,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, HO, and ENGELHARDT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Appellant Gilbert Sanchez, a welder employed by Appellee Smart Fabricators of Texas, LLC ("Smart"), was injured when he tripped on a pipe welded to the deck of a jacked-up offshore drilling rig.[1] At the time of the accident, Sanchez had worked for Smart for 67 days, all but two of which he spent on jacked-up rigs. Sanchez brought a negligence action against Smart under the Jones Act, which authorizes seamen injured on the job to sue their

---

[1] The rig was owned by Enterprise Offshore Drilling LLC. Smart does not own or operate any rigs or vessels, instead working as a contractor "in the business of steel fabrication and repairing oil and gas drilling equipment." Sanchez initially sued Enterprise as well as Smart, but he later dismissed all claims against Enterprise without prejudice.

employers in state court.[2] Smart removed the case to the Southern District of Texas. The district court denied Sanchez's motion to remand and then granted Smart's motion for summary judgment, both for the same reason: Sanchez did not point to evidence that could establish his status as a seaman for purposes of the Jones Act. Sanchez now appeals both orders.

Generally, Jones Act claims are "not subject to removal to federal court even in the event of diversity of the parties."[3] However, only seamen are entitled to sue under the Jones Act.[4] If a plaintiff is not a seaman, his sole remedy against his employer is workers' compensation—meaning that he cannot maintain an action in either state or federal court.[5] Because the Jones Act was designed to address the unique dangers of ocean-faring work—dangers not faced by land-based workers, even in marine-adjacent industries—the key consideration is whether the employee "face[s] regular exposure to the perils of the sea."[6]

Accordingly, the Supreme Court has developed a two-prong test to determine whether a plaintiff qualifies as a Jones Act seaman.[7] Here, the parties (and the district court below) agree that Sanchez satisfied the first prong: his duties "contribute[d] to the function of the vessel or to the

---

[2] *See* 46 U.S.C. § 30104.

[3] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S.438, 455 (2001); *see* 28 U.S.C. § 1445(a) (incorporated by reference into the Jones Act).

[4] *See Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1033 (5th Cir. 2015).

[5] *See Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003) (internal citations omitted) (quoting *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 553 (1997)) ("It is well-settled that the Jones Act and the [Longshore and Harbor Workers' Compensation Act] are 'mutually exclusive compensation regimes.' That is, if [a] plaintiff satisfies the criteria for being a seaman, he is covered by the Jones Act and not the LHWCA; if he does not, he is protected only by the LHWCA.").

[6] *Harbor Tug & Barge*, 520 U.S. at 560; *see Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 374 (5th Cir. 2001).

[7] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).

accomplishment of its mission."[8] They dispute only the second step of the inquiry, which requires that the employee "have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[9] This requirement is designed "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation."[10]

The district court found that Sanchez failed this prong because his connection to the rig was not substantial in nature. We agree, and we write to affirm the district court's reasoning in distinguishing *Naquin v. Elevating Boats, LLC*, a 2014 case in which we considered the "substantial nature" component of the seaman test.[11] As the Supreme Court has observed, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."[12] In *Naquin*, the plaintiff employee, a vessel repair supervisor, spent approximately 70% of his time aboard lift-boats manufactured by his employer while the vessels "were moored, jacked up, or

---

[8] *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted) (quoting *Chandris*, 515 U.S. at 368).

[9] *Id.* (internal quotation marks omitted) (quoting *Chandris*, 515 U.S. at 368).

[10] *Chandris*, 515 U.S. at 368.

[11] 744 F.3d 927 (5th Cir. 2014). Smart appears to challenge the district court's finding as to the duration as well as the nature of Sanchez's connection. This argument is based on the fact that although Sanchez spent the vast majority of his working hours on jacked-up rigs, only one of those rigs (representing about 20% of Sanchez's time) was on the Outer Continental Shelf; the other was jacked up next to a pier. As the district court noted, this argument is foreclosed by the line of cases holding that jacked-up rigs are vessels in navigation—regardless of where they are positioned—unless they have become "[in]capable of being used for marine transportation," *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 494 (2005), by virtue of "major overhauls or renovations," *Chandris*, 515 U.S. at 374 (internal quotation marks omitted); *see also Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013) ("[J]ack-up drilling platforms . . . are considered vessels under maritime law."). Thus, we address only the "substantial *nature*" component of the seaman test.

[12] *Harbor Tug & Barge*, 520 U.S. at 555.

docked in [a] shipyard canal."[13] His duties included "operating the vessels' marine cranes and jack-up legs."[14] After being injured in a crane accident, he sued his employer under the Jones Act and was awarded more than two million dollars in damages.[15]

On appeal, the employer argued that Naquin was not entitled to Jones Act coverage because he was "a land-based ship-repairman, . . . not connected to vessels in navigation."[16] The employer pointed out "that Naquin was rarely required to spend the night aboard a vessel, that the vessels he worked upon were ordinarily docked, and that he almost never ventured beyond the immediate canal area or onto the open sea."[17] We rejected the employer's argument and held that Naquin was in fact a seaman despite his limited experience in open water.[18] We emphasized that workers involved in operating a vessel near the shore "still remain exposed to the perils of a maritime work environment" and are therefore within the ambit of the Jones Act.[19]

As the district court observed below, Sanchez's duties are readily distinguishable from Naquin's. Sanchez worked on drilling rigs only "while they were jacked up on the sea floor, with the body of the rig out of the water and not subject to waves, tides, or other water movement." While Naquin's workplace remained subject to the vicissitudes of a navigable waterway—close to land though it may have been—Sanchez's workplace was stable, flat, and well above the water. Unlike Naquin, whose duties included operating marine cranes and jack-up legs, Sanchez did not perform "tasks requiring operating or

---

[13] *Naquin*, 744 F.3d at 930.
[14] *Id.*
[15] *Id.* at 931.
[16] *Id.* at 932.
[17] *Id.* at 934.
[18] *Id.* at 934–35.
[19] *Id.* at 934.

No. 19-20506

navigating the rigs."[20] He was a welder, and he was injured when he tripped on a pipe welded to the floor, a circumstance unrelated to any perils of the sea. The only time Sanchez's work might be said to have "taken him to sea" in a sense contemplated by the Jones Act was for the four days when the rig was under tow—and even then, he was treated as a mere passenger, not a crew member.[21]

For these reasons, the district court did not err, nor did it offend *Naquin*, in holding that Sanchez was not a Jones Act seaman. The judgment of the district court is affirmed.

---

[20] *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346–47 (5th Cir. 1999). According to the uncontroverted testimony of the vessel's manager, Sanchez was not a member of the crew and did not contribute to the navigation functions of the vessel.

[21] Sanchez's only argument to the contrary is that jacked-up rigs may be damaged by hurricanes. This argument is waived because Sanchez did not raise it below. In any case, Sanchez fails to cite any authority indicating that hurricanes are one of the "special hazards and disadvantages to which they who go down to sea in ships are subjected." *Chandris*, 515 U.S. at 355.